# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| DAVID W. RABER,         ) | |
|     Plaintiff,             ) | |
|                          ) | |
| v.                       ) | CAUSE NO.: 1:12-cv-103-JEM |
|                          ) | |
| CAROLYN W. COLVIN,       ) | |
| Acting Commissioner of Social Security,  ) | |
|     Defendant.            ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff David W. Raber on April 3, 2012, and an Opening Brief of Plaintiff in Social Security Appeal Pursuant to L.R. 7.3 [DE 19], filed by Plaintiff on December 10, 2012. Plaintiff requests that the October 19, 2010, decision of the Administrative Law Judge denying benefits be remanded for further proceedings. For the reasons set forth below, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

Plaintiff, David W. Raber, filed applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") on January 5, 2009, alleging that he became disabled on September 28, 2008, due to degenerative arthritis, a bulging disc, and numbness in his thumbs. He was denied initially and upon reconsideration timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). On September 9, 2010, Plaintiff appeared with counsel and testified at a hearing before ALJ John S. Pope. Plaintiff's sister, Rebecca Sue Helmke and a Vocational Expert ("VE") also testified. On October 19, 2010, the ALJ issued a decision in which he found that Plaintiff was not disabled. On February 2, 2012, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision

of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this civil action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), for review of the Commissioner's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**FACTS**

**A.     Background**

Plaintiff was 45 years old at the time of his alleged onset date and 47 years old at the time of the decision. He had completed school through the 9th grade, having attended special education classes. He had worked in the past as an assembler, welder, inspector, and forklift operator.

**B.     Medical Evidence**

Plaintiff was first seen by Dr. Michael Disher, an ear, nose, and throat specialist, in March 2008 for complaints of dizziness and hearing problems dating back two years. Early tests revealed no underlying causes for the problems, and Plaintiff received medications from Dr. Jerry Dearth to treat his symptoms. In October 2008, however, testing revealed middle ear dysfunction. When Dr. Disher saw Plaintiff again in November of 2008, Plaintiff reported spontaneous attacks of vertigo with nausea, emesis, and lightheadedness lasting hours and occurring one to two times per year. Dr. Disher performed surgery on Plaintiff's middle ear in December of 2008. He reported that Plaintiff had a complete resolution of his vertigo but still experienced lightheadedness and unsteadiness. He wrote that it was his "understanding [Plaintiff] was able to return to work." AR 379. Plaintiff did not see Dr. Disher again until June of 2010. After an examination, Dr. Disher wrote that he believed

Plaintiff's impairment equaled the Listing for epilepsy. He also wrote that Plaintiff continued to have chronic difficulties with lightheaded unsteadiness and would be unable to work.

Plaintiff also has been treated for problems with his thumbs, having received surgery on them in February and October of 2002 and March and May of 2003. He also has been treated for degenerative bulging in his lower spine and disc herniation.

Plaintiff has also been screened for mental health problems. He was diagnosed in 2009 with depression and borderline intellectual functioning, having received IQ scores of 77, 76, and 83.

**C.     Plaintiff's Testimony**

Plaintiff testified that he was laid off from his job as a welder shortly after his ear surgery because of a lack of work and had not looked for work since then.

Plaintiff testified that on a typical day, he got up around 7:00 or 7:30, helped his five year-old daughter get ready for school but did not make her breakfast or walk her to the school bus, then watched television or watched out his front window until about 10:00. He said he would then eat breakfast and "either go out in the shed and piddle around or talk to the wife" until his daughter got home at 2:45, at which time he would supervise her homework for fifteen minutes. He would then watch television until dinner around 4:30 or 5:30 and then watch more television. He said his bedtime could be any time between 9:30pm and 4:00am, depending on whether his back pain prevented him from sleeping. He stated that he was able to shower, dress, and groom himself and could make himself a sandwich. He might do laundry, sweeping, or mow the lawn on the riding mower, but his wife did grocery shopping and the dishes because he would drop them. He also stated he liked to color with his daughter and might walk three houses down to his mother's house on some days.

Plaintiff also testified that he chose not to renew his driver's license after almost getting in an accident due to his dizziness. He stated that even after his surgery, his dizziness and lightheadedness had not improved. He testified that he had to lie down three or four times a week, anywhere from two to eight hours at a time, to relieve his dizziness and that the dizziness could be brought on from being in a car, bending over, or just walking. The dizziness was also sometimes accompanied by passing out, losing his balance and falling, and vomiting.

Upon questioning from his attorney, Plaintiff testified that he had lost his medical insurance after losing his job at the end of 2008 and had not obtained other insurance until qualifying for Medicaid in June 2010. He stated that the lack of insurance affected his ability to go to the doctor, that he would have gone to the doctor more frequently had he had insurance, and that he did go back to the doctor after qualifying for Medicaid.

**D.      Plaintiff's Sister's Testimony**

Plaintiff's sister testified that Plaintiff was unable to read or write and that she had helped him fill out his disability application and often accompanied him to medical appointments. She said she would frequently witness his episodes of dizziness, especially in the car, including on the drive to the hearing.

**E.      Vocational Expert Testimony**

The ALJ presented the VE with a hypothetical of an individual in the age range of 45 to 47, educated at the ninth grade level in special education, past relevant work same as Plaintiff, limited to light unskilled work involving only occasionally climbing, balancing, stooping, kneeling, crouching, and crawling, and must avoid concentrated exposure to extreme cold, extreme heat, humidity, pulmonary irritants, and even moderate exposure to hazards. He specifically instructed

4

the VE to ignore any information he may have gathered from reading the record or listening to the testimony. The VE testified that Plaintiff would be unable to do most of his past relevant work, but could still work as an inspector. The VE further testified that if the ALJ found all of Plaintiff's testimony to be credible and supported by medical evidence, there would be no jobs available to Plaintiff because of his limitations in concentration and with fingering.

**F.     ALJ's decision**

The ALJ found that Plaintiff had the following severe impairments: endolymphatic hydrops, right Ménière's disease with hearing loss, degenerative disease, chronic lung disease, organic mental disorder, and affective disorder. However, the ALJ found that none of these impairments, alone or in combination, met or equaled a Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. He then found that Plaintiff had a residual functioning capacity for light work, limited further to unskilled work, involving only occasional climbing, balancing, stooping, kneeling, crouching, and crawling, and avoiding concentrated exposure to extreme cold, extreme heat, humidity, pulmonary irritants, and even moderate exposure to hazards. Finally, the ALJ found that Plaintiff was capable of performing his past relevant work as an inspector and was, therefore, not disabled.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to

5

support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see*

*also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically

7

considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920(a)(4)(I)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

**ANALYSIS**

Plaintiff seeks reversal or remand of the ALJ's decision based on the following arguments: (1) The ALJ committed error in assessing the credibility of Plaintiff's testimony regarding his symptoms; (2) The ALJ did not give proper weight to the medical opinion of a treating specialist that Plaintiff equaled a Listing; and (3) The ALJ failed to incorporate moderate limitations in concentration, persistence, or pace in his hypothetical to the VE. The Court addresses each argument in turn below.

1. **Credibility Determination**

Plaintiff argues that the ALJ improperly evaluated Plaintiff's testimony regarding his symptoms. In determining a claimant's residual functioning capacity, an ALJ must consider a claimant's statements about his symptoms and their effect on his ability to work. *See* 20 C.F.R. § 404.1529(a). The regulations provide a two-part test for determining the effects of pain or other symptoms on a claimant's ability to work: (1) the ALJ must determine whether there is a medically determinable impairment that could reasonably be expected to produce the symptoms alleged; and if there is, (2) the ALJ must consider the intensity, persistence, and limiting effects of the alleged symptoms to determine the extent to which they limit the claimant's capacity for work. 20 C.F.R. § 404.1529(b), (c).

If the claimant alleges the intensity, persistence, or limiting effects of the symptoms are greater than objective medical evidence alone can prove, however, the ALJ must determine whether the claimant's allegations are credible. 20 C.F.R. § 404.1529(c). Social Security Ruling 96-7p instructs the ALJ on how to make this credibility finding. It provides that one indication of credibility is the consistency of the claimant's allegations with other evidence in the record, including the claimant's daily activities and any treatment the claimant receives or has received to relieve his symptoms. S.S.R. 96-7p, 1996 WL 374186, at *3, *6 (July 2, 1996). An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong," that is, that it "lacks any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008). However, to create the necessary "logical bridge" between the evidence and the conclusion, the credibility finding must be "sufficiently specific to make clear to the individual and to any subsequent

9

reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." 20 CFR § 404.1529(c); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms but that Plaintiff's statements regarding his "more severe restrictions" were "not fully credible." AR 25. The ALJ provided three reasons for this finding: (1) Plaintiff had stopped working for reasons other than his impairments; (2) Plaintiff's daily activities were "not limited to the extent one would expect given the complaints of disabling symptoms and limitations;" and (3) Plaintiff had not "generally received the type of treatment one would expect from a totally disabled individual." Plaintiff argues the ALJ erred in basing his credibility findings on these points.

First, Plaintiff argues that the ALJ erred in discrediting Plaintiff's alleged symptoms because he "stopped working due to a work-related termination rather than because of the allegedly disabling impairments." AR 25. Plaintiff argues that, although he was terminated because of a lack of work on December 31, 2008, he had "stopped working" prior to his official termination because of his impairments. Plaintiff states, and a letter from his former employer confirms, that he had been on medical leave since the second week of October of 2008. The employer also wrote that Plaintiff had missed another forty-eight days in 2008 prior to that medical leave. Because Plaintiff did actually "stop working" prior to his termination, that he was ultimately terminated for lack of work does not undermine his credibility.

Next, Plaintiff argues that the ALJ erred in discrediting Plaintiff's alleged symptoms because they were inconsistent with his daily activities. The ALJ stated that Plaintiff "was able to care for a young child at home, which can be quite demanding both physically and emotionally." AR 25.

10

The only evidence in the record of Plaintiff's child-care duties is from Plaintiff's own testimony, in which he stated he helps his five year-old daughter get ready for school, supervises her fifteen minutes of homework after school, and likes to color with her. Plaintiff testified that he watches television while his daughter plays outside and that his wife cooks their daughter's breakfast, walks their daughter to the school bus, does the grocery shopping, and washes the dishes. Plaintiff provided no further details on how child-care duties were allocated between him and his wife. The ALJ based his credibility determination on an assumption that because having a young child "*can be* quite demanding" (emphasis added), it necessarily was for Plaintiff. This assumption cannot alone create the necessary logical bridge from the facts to the ALJ's credibility conclusion. *See Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (finding that daily activities that included helping four children get ready for school, driving them to school, washing dishes, doing laundry, preparing dinner, and helping the children with homework were "not of a sort that necessarily undermines or contradicts a claim of disabling pain"). The ALJ gave no other specific examples of daily activities he found inconsistent with Plaintiff's alleged symptoms. Without further explanation of which of Plaintiff's daily activities are inconsistent with Plaintiff's testimony and why, this Court cannot determine whether the necessary logical bridge between the evidence and the finding exists.

Finally, Plaintiff argues that the ALJ erred in discrediting Plaintiff's alleged symptoms because they were inconsistent with the level and frequency of treatment Plaintiff sought. Plaintiff argues that the ALJ was required to take into consideration the fact that Plaintiff was unable to afford medical treatment because of a lack of health insurance after losing his job. The Commissioner responds that little in the record, other than Plaintiff's own testimony, would have indicated to the ALJ that Plaintiff had difficulty affording medical care. Social Security Ruling 96-

11

7p advises ALJs that a claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints . . . and there are no good reasons for this failure." S.S.R. 96-7p, 1996 WL 374186, at *7 (July 2, 1996). Therefore, an ALJ may infer from a lack of treatment that symptoms may not be as intense or disabling as alleged. However, Ruling 96-7p goes on to say:

> [T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner.

*Id*. *See also Roddy v. Astrue*, 705 F.3d 631, 638-39 (7th Cir. 2013) (faulting ALJ's credibility determination for failing to consider that Plaintiff's lack of treatment was due to a lack of insurance) (citing *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir.2009); *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir.2009); Craft v. Astrue, 539 F.3d 668, 678-79 (7th Cir 2008)). Upon questioning by his attorney at the hearing, Plaintiff testified to having no health insurance between the time he lost his job on December 31, 2008, and his qualifying for Medicaid in June 2010, about three months prior to the hearing. He stated the lack of insurance affected his ability to go to the doctor. He further stated that he would have gone back to Dr. Disher had he had insurance and, in fact, did go back to Dr. Disher after qualifying for Medicaid. If the ALJ considered these facts, he did not mention them in his decision. That little other evidence in the record objectively verifies Plaintiff's inability to pay for health care does not, as the Commissioner suggests, permit the ALJ to ignore Plaintiff's own explanation.

12

As the only reasons given for finding Plaintiff's testimony not credible do not stand up to scrutiny, the Court finds that the ALJ's credibility determination is insufficient. Without a proper credibility determination, the Court cannot trace the path of the ALJ's reasoning in deciding what weight to give Plaintiff's allegations in determining his RFC. Accordingly, the Court remands and directs the Commissioner to provide a more thorough consideration of the factors required by the regulations and Ruling 96-7p in determining Plaintiff's credibility and, should the Commissioner change his mind about the credibility of Plaintiff's statements, to modify the RFC accordingly.

**2.  Weight of Treating Physician's Opinion that Plaintiff Equaled a Listing**

Plaintiff argues that the ALJ failed to give proper weight to Dr. Disher's opinion that Plaintiff equaled the Listing for epilepsy, resulting in an erroneous finding that Plaintiff did not equal a Listing. Whether a claimant equals a Listing is an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(2). When a medical source gives an opinion on an issue reserved to the Commissioner, it will be given no "special significance" and is never entitled to controlling weight. 20 C.F.R. § 404.1527(d)(3); SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996). However, an ALJ may not simply ignore such an opinion, but must "evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." S.S.R. 96-5p, 1996 WL 374183, at *3 (July 2, 1996). If the evidence in the record does not establish a basis for the opinion, the ALJ must still "make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id*. at *6.

A single page questionnaire provided to Dr. Disher and dated August 24, 2010, provided the description for Listing 11.03, nonconvulsive epilepsy, and asked whether he believed his "patient's vestibular disorder, in combination with any other impairments, [was] at least as medically severe

13

as the condition described." AR 538. Dr. Disher checked the "Yes" box and explained that he did so because "[Patient] has continued unsteadiness and cannot work or drive." AR 538. The ALJ cited three reasons for not crediting this opinion: (1) Dr. Disher's opinion departed substantially from his opinion of February 2009, and Dr. Disher had not seen Plaintiff in the interim to provide a reason for the change of opinion; (2) "The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another;" and (3) Dr. Disher's opinions are not supported by a narrative or treatment record sufficient to evaluate the basis of the finding." Each reason is addressed below in turn.

Plaintiff argues that the ALJ's first—and primary—reason for discrediting Dr. Disher's opinion was simply a misreading of Dr. Disher's February 2009 letter. The ALJ represented correctly that Dr. Disher's February 2009 letter stated that Plaintiff "showed a complete resolution of his episodic vertigo after surgery, though he did have a continued sensation of lightheadedness and unsteadiness." AR 26. The ALJ then wrote that Dr. Disher stated that "it was his understanding that claimant *could return to work*." AR 26 (emphasis added). However, on the Listing form completed in August 2010, Dr. Disher wrote that Plaintiff *could not work* because of his unsteadiness. Noting the discrepancy between these two opinions and the fact that Dr. Disher had not seen Plaintiff in the interim to warrant such a change in opinion, the ALJ discredited the opinions on the form.

What Dr. Disher actually wrote, however, was that it was his "understanding [Plaintiff] *was able to* return to work." AR 379. Dr. Disher's statement was a statement of fact, albeit an incorrect one, that Plaintiff had gone back to work, not a statement of opinion regarding Plaintiff's ability to

14

work.  Therefore, the 2010 Listing opinion does not substantially diverge from the 2009 opinion, and this reason does not support the ALJ's rejection of Dr. Disher's opinion.

The ALJ's next reason—that doctors might provide an opinion to help a patient get disability out of sympathy—also fails.  The ALJ notes that "it is difficult to confirm the presence of such motives," but "they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case."  The only reason the ALJ gives for inferring a bias on the part of Dr. Disher is the substantial departure of his Listing opinion from the earlier one, which the Court has already demonstrated was a mistaken reading of the record.  Without this support, the fact that "possibility always exists" of bias on the part of a doctor providing an opinion is not enough to assume that it did exist in this case.

Finally, the ALJ states that he discredited Dr. Disher's opinion because it was in the form of a checkbox in a provided form without narrative or treatment records to support it.  This argument is more persuasive.  Plaintiff bears the burden of proving that his impairments meet or equal a Listing, including showing that medical findings of his impairment are at least equal in severity and duration to all the criteria of the Listing he claims to meet.  *See Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).  Listing 11.03 requires documentation of "a typical seizure pattern including all associated phenomena, occurring more frequently than once weekly. . . . [and] must also present with alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 11.03. Nothing on Dr. Disher's form explains and nothing in his records demonstrates how Plaintiff's findings are at least equal in severity or duration to these criteria.  Therefore, the record as it exists is inadequate to support finding that Plaintiff equaled a Listing, and

15

Plaintiff did not meet his burden of proving he equaled the Listing. However, as the Court is remanding this case on other grounds, the ALJ is strongly encouraged to "make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion," as Ruling 96-5p suggests, in order to ascertain whether those criteria are equaled. S.S.R. 96-5p, at *6.

**3.    Hypothetical to the VE**

Finally, Plaintiff argues that the ALJ's finding that Plaintiff was able to perform his past work is erroneous because the hypothetic posed to the VE was flawed. Specifically, Plaintiff argues the ALJ should have included in the hypothetical the moderate limitations in concentration, persistence, and pace he found at Step Three. A hypothetical "must include *all* limitations supported by medical evidence in the record." *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) (emphasis in original). The purpose of this requirement is to ensure that the VE has the full picture of a claimant's limitations when answering the ALJ's questions. *Id*. The only exceptions to this requirement exist where a VE can see the full picture of a claimant's limitations despite a less than precise hypothetical. For example, the Seventh Circuit has allowed exceptions in cases in which the VE independently knew of a claimant's limitations from personally witnessing the testimony or reading the record, the hypothetical mentioned an underlying impairment such that the resulting limitations would have been apparent to the VE, and the hypothetical asked would necessarily reflect the limitations found, even if the hypothetical limitations were phrased differently from earlier findings. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619-20 (7th Cir. 2010).

In determining whether Plaintiff met the Paragraph B criteria of mental health Listings at Step Three, the ALJ found Plaintiff demonstrated moderate restrictions in concentration, persistence, or pace due to his "borderline intellectual functioning range," his inability to comprehend what he

16

reads, and his inability to follow instructions. AR 18-19. In the RFC assessment, the ALJ's only accommodation of restrictions in mental functioning was to limit Plaintiff to "unskilled work." The ALJ's discussion in support of that conclusion did not address any specific mental functions, not even Plaintiff's "inability to follow instructions" the ALJ noted at Step Three. *See* 20 C.F.R. § 404.1545(c) (suggesting possible mental functions relevant to the RFC to include "understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting"). The ALJ similarly limited the hypothetical worker described to the VE as limited to "unskilled work" without further elaboration.

The Commissioner argues that because this hypothetical mirrors the RFC, all the limitations the ALJ found in the RFC analysis were, in fact, included in the hypothetical. He cites numerous recent district court cases to support the proposition that when there is no inconsistency between the RFC and the hypothetical, remand is not mandated. *See, e.g. Packham v. Astrue*, 762 F. Supp. 2d 1094, 2011 WL 13531 (N.D. Ill. Jan. 4, 2011); *Warner v. Astrue*, 880 F. Supp. 2d 935, 2012 WL 3044344 (N.D. Ind. July 25, 2102). Effectively, the Commissioner argues that because Plaintiff did not object to the RFC's lack of references to limitations in concentration, persistence, or pace, he cannot object to the hypothetical not including more specific limitations in concentration, persistence, or pace. The Court is unpersuaded by this argument. The limitations to be included in a hypothetical are not necessarily limited to those found in the RFC analysis. *See, e.g., Kasarsky v. Barnhart*, 335 F.3d 539 (7th Cir. 2003) (finding a hypothetical flawed where it did not include paragraph B limitations found at Step Two of the sequential evaluation process). The Seventh Circuit clearly explains that the hypothetical must include *all* of a claimant's limitations necessary for a VE to form a complete picture of the plaintiff's ability to work in order for the VE's answers

17

to constitute substantial evidence upon which an ALJ may base his determinations. *See , e.g., O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). That Plaintiff could have or should have also objected to the lack of specificity in the RFC does not preclude him from arguing a lack of specificity in the hypothetical.

In this case, the ALJ's hypothetical included a limitation for "unskilled work." The regulations define "unskilled work" as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). Although a limitation to "unskilled work" may cover some types of limitations in concentration, persistence, and pace, it often does not. *See, e.g., Stewart v. Astrue*, 561 F.3d 679, 684-85 (holding limiting hypothetical individual to "simple, routine tasks" did not account for limitations in concentration); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (concluding "unskilled work" in hypothetical did not adequately reflect difficulties with memory, concentration, or mood swings); *Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003) (holding hypothetical question involving an individual of borderline intelligence does not account for limitations of concentration). It does not in this case. This definition of "unskilled work" does not reflect the "inability to follow instructions" the ALJ noted at Step Three. Nor do any of the exceptions described in *O'Connor* apply as the ALJ specifically told the VE to disregard anything he learned from the testimony or the record, none of Plaintiff's underlying mental impairments were mentioned in the hypothetical, and the phrasing of Plaintiff's limitations in the hypothetical do not reflect the limitations found at earlier steps. Therefore, any answers provided by the VE based on this flawed hypothetical cannot constitute substantial evidence in support of the ALJ's disability determination. On remand, the ALJ is directed to "include all of [Plaintiff's limitations] directly in the hypothetical," as that is "the most

effective way to ensure that the VE is apprised fully of the claimant's limitations." *O'Connor-Spinner*, 627 F.3d at 619.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief requested in Opening Brief of Plaintiff in Social Security Appeal Pursuant to L.R. 7.3 [DE 19] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 23rd day of September, 2013.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record